UNITED STATES DISTRICT COURT

Northern District of California

GRACE GUZMAN, et al.,

    Plaintiffs,

 v.

COUNTY OF ALAMEDA, et al.,

    Defendants.
_____/

No. C 10-2250 MEJ

**ORDER RE: DEFENDANTS' MOTION TO DISMISS**

**(Docket #3)**

## I.  INTRODUCTION

Before the Court is Defendants County of Alameda and Katherine Moore's[1] ("Defendants") motion to dismiss Plaintiffs Grace Guzman and Y.E.'s ("Plaintiffs") complaint. (Dkt. #3.) Pursuant to Civil Local Rule 7-1(b), the Court finds this matter suitable for disposition without oral argument and hereby VACATES the September 23, 2010 hearing. Having reviewed the parties' submissions, relevant legal authority, and good cause appearing, the Court **GRANTS/DENIES** Defendants' motion for the reasons set forth below.

## II.  BACKGROUND

Plaintiff Grace Guzman is the biological mother of Plaintiff Y.E. In their Complaint, Plaintiffs allege that Y.E was taken into protective custody by the Alameda County Department of Children and Family Services shortly after her birth and placed with foster parents. (Compl. ¶ 4, Dkt. #1; Defs.' Mot. at 2:12-14, Dkt. #3.) Plaintiffs allege that on Friday, May 25, 2008, while in foster care, Y.E. was left alone during a supervised visit with her biological parents, including

---

[1] The complaint in this matter also names Alameda County CPS and County of Alameda Social Services Agency. However, both of these defendants are properly considered as the County of Alameda. (Defs.' Mot. at 1:20-21, Dkt. #3.)

Plaintiff Guzman. (Compl. ¶ 4, Dkt. #1.) According to the complaint, Y.E.'s foster parents noticed bruises on her head and "raccoon eyes" the day after the supervised visit, and took Y.E. to the hospital the following day. *Id.* Y.E. was diagnosed as having suffered blunt force trauma to the head. *Id.*

Plaintiffs further allege that Alameda County social worker Katherine Moore investigated the incident and confirmed that Y.E. had suffered an injury while in foster care. *Id.* at ¶ 5. In her report, Moore listed the perpetrator as unknown and opined that the injury did not occur during the time frame of the supervised visit. *Id.* Plaintiffs claim that Moore's report failed to find that the foster mother had perpetrated the injury, despite a statement by one of the foster mother's other children that the foster mother had hit Y.E. *Id.* Plaintiffs allege that Y.E. was placed in a different foster home following her release from the hospital. *Id.*

Plaintiffs allege that Guzman grew frustrated when her "concerns" about Y.E. went unacknowledged, so she lodged a complaint against Moore with the Alameda County Department of Children and Family Services. *Id.* at ¶ 6. Plaintiffs allege that in willful retaliation for the complaint made against her, Moore "deliberately, maliciously and vindictively" removed Y.E. again from Guzman's custody "even before her deadline to seek a treatment program had run, and thereafter keeping the children [sic] away from their mother in the foster system" when Y.E. should have been returned to Ms. Guzman weeks sooner. *Id.* Plaintiffs claim Moore inflicted "cruel emotional distress" on them by abusing her authority, which "[is] strongly suggestive of inadequate administrative oversight of staff by Defendant Alameda County." *Id.* Finally, Plaintiffs allege that on July 28, 2008, while in foster care for a second time, Y.E. was again injured and required stitches to her head. *Id.* at ¶ 7.

On June 10, 2009, Grace Guzman, as the sole plaintiff, filed a state court action for negligence against Defendants based on the same facts asserted in the present action. (Request for Judicial Not., Ex. 1, Dkt. #4.) She sought $10,000.00 in damages in her state court action. *Id.* On October 27, 2009, Plaintiff filed a request for dismissal of the state court action without prejudice, and the action was concluded. *Id.* at Ex. 2.

On May 25, 2010, Plaintiffs filed the present action asserting two claims for relief against Defendants: (1) Violation of Civil Rights (42 U.S.C. 1983) for interfering with Plaintiffs' right to live without governmental interference, and (2) negligence for inadequate foster home placement and supervision of Y.E. (Compl., Dkt #1.) Defendants filed their motion to dismiss on July 30, 2010. (Dkt. #3.) Plaintiffs filed an Opposition on August 27, 2010, (Dkt. #24), to which Defendants filed a Reply on September 9, 2010 (Dkt. #25).

### III. DISCUSSION

Defendants move the Court to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) on the on the following grounds: (1) Defendant Katharine Moore is entitled to absolute immunity; (2) the Complaint fails to allege a proper basis for municipal liability against Defendant County of Alameda; and (3) California Government Code Sections 815, 820.2 and 821.6 immunize Defendants from liability for negligence. (Defs.' Mot. at 1:25-2:2, Dkt. #3.)

In response, Plaintiffs argue that the tortious conduct alleged here is ministerial rather than discretionary and, therefore, the doctrine of prosecutorial immunity does not apply. (Pls.' Opp'n at 2:7-12, Dkt. #24.) Plaintiffs maintain that there are significant factual disputes as to the nature and quality of the supervision that was provided by Defendants, and they "should be allowed their day in court." *Id.* at 2:13-15, 3:6-7.

### A. Request for Judicial Notice

As a preliminary matter, Defendants request that the Court take judicial notice of the following documents: (1) a Complaint filed on June 10, 2009, in Alameda County Superior Court, action number RG09456896, in the action entitled *Grace Guzman v. County Of Alameda, Alameda County CPS; CPS Employee Catherine Moore; and Does 1 To 50*; and (2) a Request for Dismissal Without Prejudice, filed in Alameda County Superior Court, action number RG09456896, in the action entitled *Grace Guzman v. County Of Alameda, Alameda County CPS; CPS Employee Catherine Moore; and Does 1 To 50*. (Request for Judicial Not., Exs. 1-2, Dkt. #4.) Plaintiffs have not filed an opposition to Defendants' request.

3

1        Federal Rule of Evidence 201(b)(2) allows the Court to judicially notice facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Pursuant to Federal Rule of Evidence 201, the Court may consider judicially noticed facts, *Mullis v. U.S. Bankr.Ct. for Dist. of Nev.*, 828 F.2d 1385, 1388 (9th Cir.1987), and matters of public record, including pleadings, orders and other papers filed with the court, *Mack v. South Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir.1986) (abrogated on other grounds by *Astoria Fed. Sav. and Loan Ass'n v. Solimino*, 501 U.S. 104 (1991)).

As the documents here are papers filed with the superior court, the Court GRANTS Defendants' request and takes judicial notice of Exhibits 1 and 2.

**B.     Legal Standard**

Pursuant to Rule 12(b)(6), a defendant may seek dismissal of a complaint for failure to state a claim upon which relief can be granted. Rule 8, which provides the standard for judging whether such a cognizable claim exists, requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, to survive a motion to dismiss, a complaint need not provide detailed factual allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted).

A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," not just conceivable. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

4

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989).

**C.     Application to the Case at Bar**

Plaintiffs' first cause of action is for violation of 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution, alleging that Defendants violated Guzman's constitutional right to live with her daughter without government interference. (Compl. ¶ 8, Dkt. #1.) Their second cause of action is for negligence, alleging that Defendants negligently permitted Plaintiff Y.E. to be placed in an inadequate foster care home. *Id.* at ¶ 10.[2] In discussing Defendants' motion, the Court finds it appropriate to first consider Plaintiffs' § 1983 cause of action, followed by the negligence claim.

1.     <u>Whether Defendant Katherine Moore is entitled to absolute immunity under § 1983</u>

In their motion, Defendants argue that because Plaintiffs have not pled facts establishing that Y.E. was no longer a dependent of the court at the time of Moore's alleged conduct, Plaintiffs' claim against her under 42 U.S.C. § 1983 should be dismissed based on principles of absolute immunity. Specifically, Defendants argue that social workers such as Moore enjoy absolute, quasi-judicial immunity when making post-adjudication custody decisions pursuant to a valid court order. (Defs.' Mot. at 3:23-4:22, Dkt. #3.)

In response, Plaintiffs argue that Moore's decisions were ministerial in nature and not entitled to immunity. (Pls.' Opp'n at 2:3-18, Dkt. #24.)

42 U.S.C. § 1983 enables those individuals whose rights were deprived by persons acting

---

[2]Plaintiffs' Complaint contains two paragraphs numbered "9." For clarity, the Court shall refer to the second as paragraph 10.

5

1  under color of state law to bring their claims in federal court. *Miller v. Gammie*, 335 F.3d 889, 895
2  (2003). "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method
3  for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994)
4  (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979)). To establish a claim under § 1983, a
5  plaintiff must initially allege "(1) the conduct complained of was committed by a person acting
6  under color of state law; and (2) the conduct deprived the plaintiff of a constitutional right." *L.W. v.*
7  *Grubbs*, 974 F.2d 119, 120 (9th Cir. 1992). Generally, "parents and children have a well-elaborated
8  constitutional right to live together without governmental interference." *Wallis v. Spencer*, 202 F.3d
9  1126, 1136 (9th Cir. 2000). This right is "an essential liberty interest protected by the Fourteenth
10 Amendment's guarantee that parents and children will not be separated by the state without due
11 process of law except in an emergency." *Id.* The Fourteenth Amendment protects the individual
12 against "arbitrary action of government." *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998).

13         On its face, § 1983 does not include any defense of immunity. Nevertheless, the Supreme
14 Court has recognized that when Congress enacted § 1983, it was aware of a well-established and
15 well-understood common-law tradition that extended absolute immunity to individuals performing
16 functions necessary to the judicial process. *See Forrester v. White*, 484 U.S. 219, 225-26 (1988);
17 *Imbler v. Pachtman*, 424 U.S. 409, 418-24, 430 (1976). Thus, it was presumed that if Congress had
18 wished to abrogate common-law immunity, it would have done so expressly. *Buckley v.*
19 *Fitzsimmons*, 509 U.S. 259, 268 (1993); *Pierson v. Ray*, 386 U.S. 547, 554-55 (1967).

20         The Supreme Court in *Imbler* established an approach that granted state actors absolute
21 immunity only for those functions that were critical to the judicial process itself. *Imbler*, 424 U.S. at
22 430; *see also Burns v. Reed*, 500 U.S. 478, 486 (1991). At common law, judges, prosecutors, trial
23 witnesses, and jurors were absolutely immune for such critical functions. *Burns*, 500 U.S. at 490
24 (internal quotation and citation omitted).

25         The Ninth Circuit has recognized that family-service social workers, like Defendant Moore
26 in this case, perform some functions similar to those of prosecutors. *Miller*, 335 F.3d at 896.
27 However, only in "initiating a prosecution and in presenting the State's case" is the prosecutor
28

6

absolutely immune. *Imbler*, 424 U.S. at 431. This is because the prosecutor often must make "decisions that could engender colorable claims of constitutional deprivation" upon short notice and with poor information. *Id.* at 425. Exposing a prosecutor, years and many cases later, to civil damages for a particular prosecutorial decision could impose intolerable burdens on the prosecutor and unduly hamper the prosecutor's performance. *Id.* at 425-26.

Thus, the Ninth Circuit also recognizes that, while social workers are entitled to absolute immunity for certain functions, they also perform functions that may not be entitled to immunity. *Miller*, 335 F.3d at 896. In *Meyers v. Contra Costa County Department of Social Services*, 812 F.2d 1154, 1157 (9th Cir.1987), the Ninth Circuit held that the initiation and pursuit of child-dependency proceedings were prosecutorial in nature and warranted absolute immunity on that basis. However, the court distinguished between a social worker's activities performed as an advocate within the judicial decision-making process, a function for which there is common-law absolute immunity, and other actions taken by a social worker. *Id*. It found that unless the social worker's activity has the requisite connection to the judicial process, only qualified immunity is available. *Id.* at 1158.

Here, Plaintiffs do not allege that Moore had any personal involvement in Y.E.'s initial removal or placement into foster care. Rather, Plaintiffs allege that Moore investigated a report of suspected abuse against Y.E. after she had already been adjudicated by the juvenile court and placed in foster care. They allege that Moore "retaliated" against Plaintiff Guzman based on her complaints about how the investigation was handled, and removed the child "again" from Guzman's custody. Under *Meyers*, it appears that Moore might be entitled to immunity if she performed these activities as an advocate within the judicial-making process. However, Plaintiffs' factual allegations are incomplete and contradictory because they do not establish when, or even if, the juvenile court changed Y.E.'s dependency status after the incident. Thus, because Plaintiffs have not pled facts that establish whether Y.E. was a dependent of the court at the time of Moore's alleged conduct, it is not clear whether absolute immunity is appropriate.

Defendants seem to argue that it is inconsequential whether Moore acted as an advocate within the judicial decision-making process; rather, they maintain that general allegations of

7

improper investigations and improper decisions on the part of county social workers, such as the placement issues in this case, do not establish a constitutional violation even when made after a dependency adjudication has been made. In support of their argument, Defendants cite to two Ninth Circuit cases in which the court found that social workers were entitled to immunity when making post-adjudication custody decisions. *See Mabe v. San Bernardino County, Dept. of Public Social Services*, 237 F.3d 1101, 1109 (9th Cir. 2001) (social workers "enjoy absolute, quasi-judicial immunity when making post-adjudication custody decisions pursuant to a valid court order."); citing *Babcock v. Tyler*, 884 F.2d 497, 503 (9th Cir. 1989) (holding social workers entitled to absolute immunity from a claim that they erred in placing minor dependents in foster home where the minors were later sexually abused). The court in *Babcock* saw a fundamental inconsistency in protecting social workers from liability for actions taken up through the adjudication of dependency, and then exposing them to liability for the subsequent, post-adjudication and placement decisions approved by court orders. *Babcock*, 884 F.2d at 503. Thus, the court held that all actions taken in "connection with" and "incident to" ongoing child dependency proceedings were entitled to absolute immunity. *Id.*

However, four years after *Babcock*, the Supreme Court held in *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429 (1993), that absolute immunity shields only those who perform a function that enjoyed absolute immunity at common law. *Miller*, 335 F.3d at 897. Even actions taken with court approval or under a court's direction are not in and of themselves entitled to quasi-judicial, absolute immunity. *Antoine*, 508 U.S. at 435-36. Instead, to enjoy absolute immunity for a particular action, the official must be performing a duty functionally comparable to one for which officials were rendered immune at common law. *Miller*, 335 F.3d at 897. Thus, "beyond those functions historically recognized as absolutely immune at common law, qualified and only qualified immunity exists." *Id.* The Supreme Court expressed that principle as a presumption: "The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties. We have been quite sparing in our recognition of absolute immunity, and have refused to extend it any further than its justification would warrant." *Antoine*, 508 U.S. at 433 n. 4

8

(internal quotations omitted). The burden is on the official claiming absolute immunity to identify the common-law counterpart to the function that the official asserts is shielded by absolute immunity. *Id.* at 432.

Given this authority, the Ninth Circuit has "recognized absolute immunity for social workers only for the discretionary, quasi-prosecutorial decisions to institute court dependency proceedings to take custody away from parents." *Miller*, 335 F.3d at 898 (citing *Meyers*, 812 F.2d at 1157). Here, it does not appear that court dependency proceedings are at issue. Further, the Court finds that Defendants have not met their burden to identify the common-law counterpart to the function that they assert is shielded by absolute immunity. Accordingly, at this stage in the proceeding and on the record available, the Court finds that Moore is not entitled to absolute immunity.

"To the extent, however, that social workers also make discretionary decisions and recommendations that are not functionally similar to prosecutorial or judicial decisions," qualified immunity is available. *Id.* at 898. "Examples of such functions may include decisions and recommendations as to the particular home where a child is to go or as to the particular foster parents who are to provide care." *Id.* Here, given the limited factual record presented, the Court finds it inappropriate to make such a determination at this stage in the proceedings. Plaintiffs have alleged enough facts to state a claim to relief that is plausible on its face, and the Court must assume their veracity. *Ashcroft*, 129 S.Ct. at 1950. Thus, the Court finds it appropriate to allow the case to proceed, given that discovery and a more complete record will allow it to determine whether the functions Moore allegedly performed give rise to the protection afforded by qualified immunity. Accordingly, Defendants' motion to dismiss this claim is DENIED.

  2. <u>Whether Plaintiffs have Pled a Basis for Municipal Liability Against Defendant County of Alameda.</u>

Defendants next argue that dismissal is appropriate as to any municipal liability claim against Defendant County of Alameda because Plaintiffs have failed to allege conduct on the part of the County or its employees that amounts to a constitutional deprivation. Defendants also argue that Plaintiffs have failed to allege that any such deprivation was pursuant to a deliberately indifferent

9

policy, custom or practice of the County. (Defs.' Mot. at 4:25-5:10, Dkt. #3.)

In response, Plaintiffs argue that they have alleged that the County interfered with their right to be free from government interference, which implies that the County's behavior is "strongly suggestive of administrative oversight in operating its foster care system," and that this amounts to a policy that is the moving force behind the violation. (Pls.' Opp'n at 2:24-3:2, Dkt. #24.)

Public entities cannot be held vicariously liable for the tortious acts of their employees under 42 U.S.C. § 1983. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). The local government unit "itself must cause the constitutional deprivation." *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992), *cert. denied*, 510 U.S. 932 (1993). Because liability of a local governmental unit must rest on its actions, not the actions of its employees, a plaintiff must go beyond the respondeat superior theory and demonstrate that the alleged constitutional violation was the product of a policy or custom of the local governmental unit. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-480 (1986). Thus, to maintain a civil rights claim against a local government, a plaintiff must establish the requisite culpability (a "policy or custom" attributable to municipal policymakers) and the requisite causation (the policy or custom as the "moving force" behind the constitutional deprivation). *Monell*, 436 U.S. at 691-94; *Plumeau v. School Dist. #40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).

Here, the Court finds that Plaintiffs have provided enough facts to state a claim for relief that is plausible on its face. Specifically, Plaintiffs allege that "inadequate foster care in Alameda County is permitted to go unchecked" by the County. (Compl. ¶7, Dkt. #1.) As a result of this alleged policy or custom, Plaintiffs allege that they suffered the constitutional violations discussed above. While not a model of clarity, the Complaint shows that it is plausible that Plaintiffs' allegations give rise to an entitlement to relief. Accordingly, Defendants' motion to dismiss this claim is DENIED.

3.  <u>Whether Moore Is Entitled To Absolute Immunity as to Plaintiffs' Negligence Claim</u>

As to Plaintiffs' negligence cause of action, Defendants argue that Moore's decisions to take Y.E. into foster care and foster placement, and the decisions regarding monitoring of that placement,

are protected by absolute immunity, regardless of whether they were made maliciously or without probable cause. Specifically, Defendants contend that county social workers investigating possible child abuse and neglect are absolutely immune from actions challenging the adequate performance of their duties and the decision of what action, if any, should be taken. (Defs.' Mot. at 5:13-15, Dkt. #3.) Defendants cite to three cases in support of their position: *Alicia T. v. County of Los Angeles*, 222 Cal. App. 3d 869 (1990); *Jenkins v. County of Orange*, 212 Cal. App. 3d 278 (1989); and *Becerra v. County of Santa Cruz*, 68 Cal. App. 4th 1450 (1998). *Id.* at 5:17-7:6.

In response, Plaintiffs concede that the principle of immunity applies to county social workers and the discretionary decisions they make on behalf of the county when they investigate child abuse cases. However, they maintain that ministerial decisions are not entitled to immunity, and argue that Moore's decisions were ministerial in nature. (Pls.' Opp'n at 2:3-18, Dkt. #24.)

Under the California Government Claims Act ("Claims Act"), Cal. Gov. Code, §§ 810, et seq., "a public employee is liable for injury caused by his act or omission to the same extent as a private person," "[e]xcept as otherwise provided by statute (including Section 820.2)." Cal. Gov. Code, § 820(a). California Government Code section 820.2 addresses a public employee's exercise of discretion and provides: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Thus, the question here is whether the injury alleged here results from the exercise of discretion vested in Moore.

Actions that are considered ministerial in nature are those that "amount only to obedience to orders which leave the officer no choice" which "plainly includes actions governed by specific statutory or regulatory directives." *Scott v. County of Los Angeles,* 27 Cal. App. 4th 125, 141 (1994). On the other hand, discretionary acts under section 820.2 are considered those acts which encompass basic policy decisions "expressly entrusted" with the government entity. *Ronald S. v. County of San Diego,* 16 Cal. App. 4th 887, 897 (1993)(citation omitted) ("imposing civil liability upon public servants when the decision turns out to be wrong[] would severely interfere with and

11

surely impede the proper workings of the responsible social service department."). Thus, courts have held that discretionary activities immune from liability pursuant to section 820.2 include: the determination to place a child in a particular foster home (*Becerra v. County of Santa Cruz,* 68 Cal. App. 4th 1450, 1462 (1989)); the selection of a custodian for a delinquent juvenile (*Thompson v. County of Alameda,* 27 Cal.3d 741, 748-49 (1980)); and the selection of an adoptive home for a dependent child (*Ronald S. v. County of San Diego,* 16 Cal. App. 4th 887, 897 (1993)).

Additionally, courts have recognized immunity for social workers in their investigations of child abuse complaints. *Jenkins v. County of Orange*, 212 Cal. App. 3d 278 (1989); *Alicia T. v. County of Los Angeles*, 222 Cal. App. 3d 869 (1990). In *Jenkins*, the Fourth District Court of Appeal held that social workers were absolutely immune from liability for their alleged inadequate and negligent investigation into a report of suspected child abuse. *Jenkins*, 212 Cal. App. 3d at 287. The plaintiffs in *Jenkins* alleged that the social workers had failed to use due care by not thoroughly investigating a report of suspected child abuse, by failing and refusing to weigh and present all the evidence, and by misrepresenting evidence to the juvenile court in a dependency proceeding. *Id.* at 283. In holding that the social workers were absolutely immune from any liability arising out of these allegations, the Fourth District Court of Appeal applied the doctrine of prosecutorial immunity as codified in California Government Code section 821.6. *Id.* That section provides: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Cal. Gov't Code § 821.6. The court reasoned that prosecutorial immunity protected the child welfare workers because their activities were either the precursor to or directly involved with a judicial proceeding (i.e., a dependency proceeding). *Jenkins*, 212 Cal. App. 3d at 286. Importantly, the court held the immunity applied to any investigative activities necessary for the child welfare workers to carry out their statutory duty to investigate possible child abuse in the first place. *Id.* at 283-85.

In *Alicia T.*, plaintiffs brought suit against a county and two of its social workers, alleging that the social workers had negligently investigated reports of suspected child abuse and had

improperly removed a child from her home. *Alicia T.*, 222 Cal. App. 3d at 876, 881. The plaintiffs in that case alleged the social workers "acted on 'incorrect, unsubstantiated, and insufficient information and therefore lacked probable cause'" to remove the child from the home; specifically, they alleged that the child welfare workers negligently relied upon the "misdiagnosis of two unqualified physicians and unreasonably held [the child] in protective custody without expert evidence she had been abused." *Id.* at 876-77. Citing *Jenkins*, the Second District applied prosecutorial immunity to bar the plaintiffs' claims, recognizing that "social workers must be absolutely immune from suits alleging the improper investigation of child abuse, removal of a minor from the parental home based upon suspicion of abuse and the instigation of dependency proceedings." *Id.* at 881. The *Alicia T.* court went further than applying prosecutorial immunity, however, by also applying discretionary immunity under California Government Code section 820.2 for essentially the same reasons:

> As evidenced by our agreement with the *Jenkins* court, and the analogy of a social worker's function to that of a prosecutor, the acts complained of by the T. family are discretionary, not ministerial. Indeed, it is the continuing exercise of this discretion in favor of the protection of minor children that motivates our decision to afford social workers absolute immunity.

*Id.* at 883; *see also Jacqueline T. v. County of Alameda,* 155 Cal. App. 4th 456, 468 (2007) (confirming that a social worker's decision to remove or not remove a child who is a possible victim of abuse or neglect is protected by both prosecutorial and discretionary immunity). Foster care placement decisions and monitoring are similarly protected by discretionary and prosecutorial immunities. *Becerra v. County of Santa Cruz*, 68 Cal. App. 4th 1450, 1459-62 (1998), *County of Los Angeles v. Superior Court*, 102 Cal. App. 4th 627, 642 (2002).

In each of these cases, the courts have recognized that affording absolute immunity fosters a social worker's ability to exercise independent, unfettered judgment in making these sensitive and highly discretionary decisions. The complaint in the present case challenges Moore's alleged decision to take Y.E. into foster care, foster placement and the monitoring of that placement. Thus, under California Government Code section 820.2 and the cases discussed above, the Court finds that these decisions are discretionary acts protected by absolute immunity, regardless of whether they

were made maliciously or without probable cause. Unlike ministerial acts, which leave the social worker no choice, Moore in the instant case acted in such a manner as to encompass basic policy decisions. As the court in *Alicia T.* noted, "it is the continuing exercise of this discretion in favor of the protection of minor children that motivates [the court's] decision to afford social workers absolute immunity." *Alicia T.*, 222 Cal. App. 3d at 883. Accordingly, the Court GRANTS Defendants' motion as to this cause of action.

### 4. Whether Defendant County Of Alameda Is Entitled To Absolute Immunity

Finally, Defendants state that Plaintiffs have not identified any statute imposing liability on Defendant County of Alameda in the complaint. Therefore, Defendants argue that Defendant County of Alameda is entitled to absolute immunity pursuant to California Government Code section 815, which grants immunity to public entities from tort liability absent a statute imposing liability. Additionally, Defendants argue that the County shares in any immunity afforded its public employees. Because Plaintiffs' complaint challenges the conduct of a single county social worker, Defendant Katherine Moore, Defendants contend that the County is entitled to the same immunity from Plaintiffs' second claim for relief.

Plaintiffs do not respond directly to this argument.

Pursuant to California Government Code section 815, public entities are immune from tort liability absent a statute imposing liability. Plaintiffs have not identified any statute imposing liability on Defendant County of Alameda in the complaint, nor is it likely they could identify any such statute based on the facts alleged. Regardless, even if Plaintiffs could identify such a statute, Defendant County of Alameda shares in any immunity afforded its public employees. *See Kayfetz v. State of California*, 156 Cal. App. 3d 491, 496 (1984) (if the public employee is immune from liability, then the public entity is also afforded that immunity under California Government Code section 815.2(b)); *Kemmerer v. County of Fresno*, 200 Cal. App. 3d 1426 (1988). Plaintiffs' complaint challenges the conduct of a single county social worker, Defendant Katherine Moore. As discussed in the previous section, Moore is entitled to absolute immunity from Plaintiffs' second claim for relief pursuant to California Government Code sections 820.2 and 821.6. The County of

Alameda shares in that immunity and, as such, cannot be liable herein.  Accordingly, the Court GRANTS Defendants' motion as to this cause of action.

### IV.  CONCLUSION

Based on the analysis above, the Court hereby **DENIES** Defendants' motion as to Plaintiffs' first cause of action and **GRANTS** Defendants' motion as to Plaintiffs' second cause of action.

**IT IS SO ORDERED.**

Dated: September 16, 2010

_____
Maria-Elena James
Chief United States Magistrate Judge