UNITED STATES DISTRICT COURT
For the Northern District of California

# UNITED STATES DISTRICT COURT

## Northern District of California

GRACE GUZMAN, et al.,

                  Plaintiffs,

   v.

COUNTY OF ALAMEDA, et al.,

                  Defendants.

_____/

No. C 10-02250 MEJ

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** (Dkt. No. 37)

## I.   INTRODUCTION

Pending before the Court is Defendants Alameda County and Katherine Moore's Motion for Summary Judgment (Dkt. No. 37). Plaintiffs Grace Guzman, on behalf of herself and her minor daughter, Y.E., have filed an Opposition (Dkt. No. 42), to which Defendants filed a Reply (Dkt. No. 47). On July 28, 2011, the Court held a hearing on this matter. After careful consideration of the parties' arguments and a thorough review of the record evidence presented, the Court **GRANTS** summary judgment in favor of Defendants.

## II.   BACKGROUND

Minor Plaintiff Y.E. is the youngest child of Ms. Guzman and Charlemagne Evangelista. Joint Statement of Undisputed Facts ("JSOF") ¶ 1, Dkt. No. 37-7. Y.E. was born four weeks premature on July 1, 2007. JSOF ¶ 2. Y.E. and Ms. Guzman both tested positive for methamphetamines at the time of Y.E.'s birth, and Y.E. was admitted to the Neonatal Intensive Care Unit of the St. Luke's Hospital in San Francisco. *Id.* Based on Y.E.'s positive drug test, the hospital made a report of suspected child abuse to Alameda County Child Protective Services ("Alameda County CPS"). JSOF ¶ 3. Subsequently, Ms. Guzman was interviewed and admitted to using methamphetamines while pregnant. JSOF ¶ 4. As a result, a protective hold was placed on Y.E., prohibiting her release from the hospital, and a dependency proceeding was initiated by Alameda County CPS in juvenile court. JSOF ¶ 5.

On July 19, 2007, Y.E. was declared a dependent of the juvenile court and was placed in Ms. Guzman's custody under the terms of a family maintenance plan supervised by Alameda County

UNITED STATES DISTRICT COURT
For the Northern District of California

1   CPS.  JSOF ¶ 6; Defendants' Request for Judicial Notice ("RJN"), Ex. 4.[1]  Ms. Guzman's continued

2   custody of Y.E. was dependent on her compliance with the court-ordered family maintenance plan.

3   JSOF ¶ 6.

4        Between July 2007 and May 2008, Ms. Guzman moved frequently and lived in different

5   locations in Alameda County, San Mateo County, and San Francisco County.  JSOF ¶ 8.  On April

6   29, 2008, Y.E. was removed from Ms. Guzman's custody by the family maintenance worker and was

7   placed back into protective custody.  RJN Ex. 7.  On April 30, 2008, Y.E. was placed in the home of

8   a foster mother, Silvia Vasquez.  JSOF ¶ 12.  The case was subsequently moved from the family

9   maintenance unit of Alameda County CPS to the dependency unit, and Defendant Katherine Moore

10  became the new child welfare worker assigned to the case.  JSOF ¶ 10.  Ms. Moore has been

11  employed with Alameda County as a child welfare worker since 1997, and is a licenced social worker

12  with a B.A. in urban affairs and a master's degree in educational psychology.  JSOF ¶ 11.  According

13  to Defendants, Ms. Moore's duties as a child welfare worker employed in the dependancy unit

14  include: (1) filing juvenile dependency petitions pursuant to Welfare and Institutions Code § 300, et

15  seq.; (2) investigating cases; and (3) providing reports and recommendation to the juvenile court

16  concerning placement and disposition.  Defendants' Statement of Facts ("DSOF"), ¶ 13, Dkt. No. 37-

17  8.  Plaintiffs dispute this assertion without providing any reasoning or alternate claims.  Y.E.'s foster

18  home was selected by Alternative Family Services, a licensed Foster Family Agency that contracts

19  with Alameda County to provide foster placement, foster placement supervision, and related services

20  ───────────────────

21       [1] Defendants have requested that the Court take judicial notice of 21 documents consisting
     of transcripts, minute orders, detention reports, petitions, and orders from the dependency
22   proceedings held in superior court. Dkt. No. 37-6. Federal Rule of Evidence 201(b)(2) allows the
     Court to judicially notice facts "capable of accurate and ready determination by resort to sources
23   whose accuracy cannot reasonably be questioned." Pursuant to Federal Rule of Evidence 201, the
     Court may consider judicially noticed facts, *Miller v. U.S. Bankr. Ct. for Dist. of Nev.*, 828 F.2d
24   1385, 1388 (9th Cir. 1987), and matters of public record, including pleadings, orders, and other
     papers filed with the court, *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986)
25   (abrogated on other grounds by *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991)).
     Because the documents Defendants have submitted are matters filed as part of a court proceeding
26   and matters of public record, the Court **GRANTS** Defendants' request and takes judicial notice of
     the Exhibits identified in their Request.
27

28

                                              2

UNITED STATES DISTRICT COURT
For the Northern District of California

for juvenile dependents within the county.  JSOF ¶ 14.  Ms. Moore is not a placement worker and had no involvement in selecting Y.E.'s foster home.  JSOF ¶ 13.  Alameda County CPS relied on Alternative Family Services to recommend a proper and appropriate foster placement for Y.E.  JSOF ¶ 16.

Defendants contend that neither Ms. Moore nor Alameda County CPS had prior knowledge of any physical or emotional abuse of children in the Vasquez home.  DSOF ¶¶ 17, 18.  Plaintiffs dispute this, but proffer no contrary evidence.  After, Y.E.'s placement, Ms. Moore stayed in contact with Alternative Family Services and periodically checked on Y.E.'s welfare throughout her stay in foster care.  JSOF ¶ 19.

On May 1, 2008, Ms. Moore filed a supplemental dependency petition regarding Y.E. under section 387 of the California Welfare and Institutions Code in Alameda County juvenile court and a detention hearing was scheduled for May 2, 2008.  JSOF ¶ 20; RJN Ex. 8.  Prior to the hearing, Ms. Moore submitted a detention report which outlined the case history and recommended that Y.E.'s detention in foster care be continued pending further investigation.  JSOF ¶ 21; RJN, Ex. 7.  On May 2, the detention hearing was held and all parties were represented.  JSOF ¶ 22; RJN, Ex. 9.  Ms. Guzman advised the juvenile court that she had moved into her mother's home in San Mateo County and would be residing there for the foreseeable future.  JSOF ¶ 23; RJN, Ex. 9.  While the court opined that it may be proper to transfer the case to San Mateo County, it did not do so at the time.  JSOF ¶ 23; RJN, Ex. 9.  The court ultimately adopted paragraphs 1 through 21 of Ms. Moore's detention report and determined that Y.E.'s removal from Ms. Guzman's home was warranted because "continuance in the home of the parent or guardian is contrary to the child's welfare . . . ."  JSOF ¶ 24-25; RJN, Ex. 9.  The court found that Y.E. met the definition of Welfare and Institutions Code § 319(a), and ordered Y.E.'s continued detention in foster care until a jurisdictional hearing on May 19, 2008.  JSOF ¶ 26; RJN, Ex. 9.

On May 19, 2008, an uncontested jurisdictional hearing was held regarding Y.E., and all parties were represented.  RJN, Ex. 11-12.  Prior to this hearing, Ms. Moore submitted a jurisdictional report to the court outlining the allegations and evidence that she believed supported a Welfare and

3

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Institutions Code § 387 petition.  JSOF ¶ 27; RJN, Ex. 10.  In the report, Ms. Moore stated that Ms.

2    Guzman had a history of disappearing for periods of time and had ongoing issues with homelessness.

3    JSOF ¶ 28; RJN, Ex. 10.  Ms. Moore determined that these behaviors, as well as Y.E.'s positive drug

4    test at birth and Ms. Guzman's failure to drug test or attend counseling since that time, were

5    consistent with possible substance abuse.  *Id*.  Ms. Moore recommended that Y.E. remain a dependant

6    of the court, and that the matter be transferred to San Mateo County where the family presently lived.

7    *Id*.  At the hearing, Ms. Guzman and Mr. Evangelista, who were both represented by counsel, agreed

8    to a modified version of Ms. Moore's jurisdictional report and all parties waived their right to a

9    contested hearing.  JSOF ¶¶ 29-30; RJN, Exs. 11, 12.  The court confirmed that Ms. Guzman had

10   read, understood, and signed the Juvenile Dependency Waiver of Rights form.  JSOF ¶ 31; RJN, Exs

11   11-12.  The court entered an order finding that Y.E. continued to be a dependent of the court under

12   Welfare and Institutions Code § 300(b), and based on the parties' agreement, ordered that Y.E.

13   remain in foster care until Ms. Guzman was in compliance with her case plan, which included drug

14   testing and counseling.  JSOF ¶ 32; RJN, Exs. 11-12.  The court also ordered the case to be

15   transferred to San Mateo County.  *Id*.

16         On May 25, 2008, Ms. Moore was informed by Alternative Family Services that Y.E. had

17   been taken to Doctor's Hospital by her foster mother, Silvia Vasquez.  JSOF ¶ 33; RJN, Ex. 13.  Y.E.

18   reportedly had a swollen forehead and bruising under her eyes.  *Id*.  Subsequently, Y.E. was

19   transferred to Children's Hospital Oakland via ambulance.  *Id*.  Plaintiffs dispute these facts, but

20   proffer no specific evidence in response.  Ms. Moore went to Children's Hospital to check on Y.E.'s

21   welfare and was informed that Y.E. had a CT scan of her brain and abdomen which was clear.  JSOF

22   ¶ 34; RJN, Ex. 13.  Y.E. did, however, have significant facial swelling and bruising, and swelling

23   running toward the back of her ears.  *Id*.  Y.E. was admitted for further tests and observation, and Ms.

24   Moore placed a CPS hold on Y.E. until the injury could be throughly investigated.  JSOF ¶ 35; RJN,

25   Ex. 13.  This hold meant that Y.E. could not be taken out of the hospital by her foster parent or

26   anyone else.  *Id*.

27         According to Defendants, Y.E.'s treating Physician, Dr. Gilgoff, reported that her injuries

28

4

1  were the result of blunt force trauma to the head.  DSOF ¶ 36; RJN, Ex. 13.  Dr. Gilgoff stated that

2  with this type of injury, Y.E. would have been very distressed, would have cried immediately, and

3  that this injury occurred sometime within 48 hours of Y.E.'s hospitalization.  *Id.*  Plaintiffs dispute

4  these statements, but point to no evidence in support.

5          On May 27, 2008, Ms. Moore conducted an in home visit with the foster family as part of her

6  investigation of Y.E.'s injury.  DSOF ¶ 37; RJN, Ex. 13.  Defendants contend that during this visit,

7  Ms. Vasquez, the foster mother, reported that Y.E. was fine until the May 23, 2008 visit with Ms.

8  Guzman and Mr. Evangelista.  *Id.*  Defendants proffer that on that evening, Ms. Vasquez noticed that

9  Y.E. was fussy, had no appetite, was vomiting, and had difficulty sleeping.  *Id.*  Defendants also

10  contend that the next morning Y.E. had not improved, had another restless night of sleep, and woke

11  up the day after, May 25, 2008, with a swollen face which prompted Ms. Vasquez to take Y.E. to the

12  hospital.  DSOF ¶ 38; RJN, Ex. 13.  Ms. Vasquez and her husband denied Y.E. was injured in their

13  home.  *Id.*  Without pointing to any conflicting evidence, Plaintiffs dispute the above contentions.

14          During the in-home visit, Ms. Moore interviewed the other children in the Vasquez

15  household.  DSOF ¶ 39; RJN, Ex. 13.  Ms. Vasquez's fifteen year old son and eight year old foster

16  child both denied seeing Y.E. being hurt.  *Id.*  Ms. Vasquez' ten year old son stated that his mother

17  had hit Y.E., but when asked to demonstrate what he saw, he gently pushed Ms. Moore's face as if he

18  were turning her head.  *Id.*  Again, Plaintiffs dispute these allegations without identifying any

19  countervailing facts.

20          Ms. Moore also spoke with Dennis Montoya, a social worker employed by Alternative Family

21  Services, who supervised a visit between Y.E., Ms. Guzman, and Mr. Evangelista two days earlier on

22  May 23, 2008.  JSOF ¶ 41; RJN, Ex. 13.  Mr. Montoya stated that he did not stay in the room the

23  entire time, but checked in every thirty minutes.  *Id.*  Mr. Montoya also stated that the visit seemed to

24  go well.  *Id.*  However, Defendants contend that Alternative Family Services' contact notes indicate

25  that Ms. Guzman and Mr. Evangelista arrived acting "somewhat oddly" and "spent a long time in the

26  bathroom."  DSOF ¶ 41a.  Defendants assert that the contact notes also state that Mr. Evangelista

27  came out of the visiting room several times talking to himself and had called the foster family early to

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1   ask about when they would be picking Y.E. up from the visit.  *Id*.  Plaintiffs dispute the accuracy of

2   the statements in the contact notes, but provide no countervailing facts in support.

3          Finally, Ms. Moore went to the Alternative Family Services office where the May 23, 2008

4   supervised visit took place.  JSOF ¶ 42; RJN, Ex. 13.  The staff reported that no one heard Y.E. cry

5   during the visit, and that the visiting room had a large window where anyone could see what was

6   going on in the room.  *Id*.  This lead Ms. Moore to conclude that it was unlikely Ms. Guzman or Mr.

7   Evangelista injured Y.E. during the May 23, 2008 supervised visit.  *Id*.

8          Based on her investigation, Ms. Moore determined that the evidence substantiated that Y.E.

9   had sustained a serious, non-accidental injury.  JSOF ¶ 43; RJN, Ex. 13.  However, due to the number

10  of people with access to Y.E. during the time frame the injury could have occurred and the lack of

11  reliable evidence incriminating any particular person, Ms. Moore listed the perpetrator as unknown.

12  *Id*.

13         The San Pablo Police Department also conducted a criminal investigation into Y.E.'s injury.

14  JSOF ¶ 44; RJN, Ex. 14.  The police interviewed the foster parents, hospital staff, Ms. Moore, and

15  Y.E.'s treating physicians.  *Id*.  The subsequent police report concluded that no viable suspect could

16  be identified, and the criminal case was closed.  *Id*.

17         On May 31, 2008, Y.E. was discharged from the hospital and placed with a new foster family

18  through a different foster agency, Hickman Homes for Children.  JSOF ¶ 46; RJN, Ex. 46.  Hickman

19  Homes for Children is a licenced foster family agency operating in the Bay Area since 1993.  *Id*.  Ms.

20  Moore received regular updates on Y.E.'s welfare from Hickman Homes, and also conducted face-to-

21  face meetings with Ms. Guzman and Y.E.  JSOF ¶ 48.  Defendants contend that Y.E. fully recovered

22  from her head injury; Plaintiffs, however, dispute this assertion, but failed to cite any contrary

23  evidence.  DSOF ¶ 49.

24         On June 2, 2008, Ms. Guzman called San Mateo County social services and requested a

25  referral for drug testing.  JSOF ¶ 50.  Ms. Guzman advised them that she was moving to San

26  Francisco.  *Id*.  Ms. Guzman began drug testing in San Francisco on June 6, 2008.  JSOF ¶ 51.

27         On June 11, 2008, San Mateo County declined to accept jurisdiction over the dependency

28

6

UNITED STATES DISTRICT COURT
For the Northern District of California

1  case, citing an inability to verify Ms. Guzman's residence within the county.  JSOF ¶ 52; RJN, Ex.

2  18.  On June 27, 2008, Alameda County juvenile court received notification of a transfer-in from San

3  Mateo County juvenile court, and on June 30, 2008, a transfer-in hearing was held in Alameda

4  County juvenile court.  JSOF ¶ 53; RJN, Ex. 19 & 20.  Ms. Moore prepared an Addendum Report for

5  the hearing stating that Ms. Guzman moved to San Francisco and Ms. Moore had been unable to

6  reach her; however, Plaintiffs dispute this contention without any citation in support.  DSOF ¶ 54;

7  RJN, Ex. 19.  The court ordered a four week continuance (until July 28, 2008) to allow Ms. Moore to

8  locate Ms. Guzman and investigate the transfer-in request.  JSOF ¶ 55.

9          On June 18, 2008, Alternative Family Services received a phone call from Ms. Vasquez.

10  DSOF ¶ 52a.  According to Defendants, Ms. Vasquez reported that Ms. Guzman had been calling Ms.

11  Vasquez' home, swore at her, and threatened to kill her.  *Id.*  Defendants also contend that Ms.

12  Vasquez stated that she believed Ms. Guzman called when she was under the influence of drugs

13  because her voice changed and she was speaking rapidly.  *Id.*  Finally, Defendants claim that Ms.

14  Vasquez reported that the family changed its phone number and would be looking into a restraining

15  order.  *Id.*  Plaintiffs dispute all of these assertions, without citing to any facts in support.

16          On July 1, 2008, Ms. Guzman called Ms. Moore's supervisor, Tom Nolan.  JSOF ¶ 56.  Ms.

17  Guzman was distressed because her attorney had told her that Ms. Moore had reported to the court

18  that Ms. Guzman's whereabouts were unknown.  *Id.*  Ms. Guzman told Mr. Nolan that she had given

19  Ms. Moore her address in San Francisco.  *Id.*  Ms. Guzman also told Mr. Nolan that she had found a

20  drug treatment program on her own, and was attending a program for counseling and drug testing

21  three times a week.  *Id.*  Mr. Nolan listened to Ms. Guzman's concerns, and memorialized them in a

22  report for the court.  *Id.*  Mr. Nolan also told Ms. Guzman that he would send her a letter with the

23  results of Y.E.'s injury investigation.  *Id.*

24          On or about July 27, 2008, Y.E. sustained a second injury while in foster care.  DSOF ¶ 57.

25  According to Defendants, a social worker from Hickman Homes reported to Ms. Moore that Y.E. had

26  fallen while in the park with her foster mother and although the injury appeared minor, the foster

27  mother took Y.E. to San Francisco General Hospital.  *Id.*  Y.E. was evaluated in the emergency room

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

for a "non-urgent" injury and was diagnosed with a minor abrasion and swelling above the right eye. DSOF ¶ 58. Defendants contend that an antibiotic cream was applied, no further treatment was recommended, and Y.E. has fully recovered from this injury. *Id*. Plaintiffs dispute all of the above contentions, but offer no contrary evidence.

On July 28, 2008, Ms. Guzman received a phone call from a social worker employed by Hickman Homes informing her that Y.E. had received a minor injury while at the park with her foster mother. JSOF ¶ 60. The injury was described to Ms. Guzman as a scratch near her eye in addition to some slight bruising. *Id*.

On July, 28, 2008, a transfer-in hearing was held at Alameda County juvenile court; all parties were represented. JSOF ¶ 63; RJN, Ex. 26. Prior to the hearing, Ms. Moore prepared a report to the juvenile court indicating that Ms. Guzman had been drug tested regularly in San Francisco since June 6, 2008, and had been attending an outpatient drug treatment program. JSOF ¶ 61; RJN, Ex. 13. Ms. Guzman located each service independently. *Id*. Additionally, Ms. Moore state that she conducted a home visit at Ms. Guzman's new residence in San Francisco. JSOF ¶ 62; RJN, Ex. 13. Ms. Moore indicated that although she had some concerns with the appropriateness of the residence, she was "impressed with the mother's change at the time of the home visit." *Id*. Ms. Moore requested a continuance for disposition to assess possible in-home placement for Y.E. *Id*. At the hearing, Y.E.'s counsel, Carol Barnett, informed the court that she wanted to conduct her own inspection of Ms. Guzman's home and an independent investigation of how Y.E.'s May 28, 2008 head injury occurred prior to the release of Y.E. to her parents. JSOF ¶ 64; RJN, Ex. 26. Additionally, Ms. Barnett stated that she wanted to work "very closely" with Ms. Moore on any decision to release Y.E. to her parents. *Id*. The court granted Ms. Moore discretion to release Y.E. to her parents prior to the next hearing, with "notice" to Ms. Barnett. JSOF ¶65; RJN, Exs. 25 & 26. The court emphasized that "it will be beneficial to everybody to make sure that counsel for the child is given notice" of any intent to release the child. *Id*. The court also adopted the recommendation of Ms. Moore to accept the transfer-in from San Mateo County, and ordered a continuance for disposition until August 25, 2008. JSOF ¶ 66; RJN, Exs. 25 & 26.

8

1       On July 29, 2008, Ms. Guzman had a supervised visit with Y.E.  JSOF ¶ 67.  After seeing

2   Y.E., Ms. Guzman believed that Y.E.'s second injury was more serious than what was reported to

3   her; Ms. Guzman believed that Y.E. had "raccoon eyes" (*i.e.* two black eyes) as a result of her fall at

4   the park, and questioned how Y.E. fell when she was not yet walking.  *Id*.  On July 31, 2008, Ms.

5   Guzman called Ms. Moore's supervisor, Mr. Nolan, and reported that Y.E. had two black eyes as a

6   result of her fall at the park.  JSOF ¶ 68; RJN, Ex. 22.  Ms. Guzman also stated that the court had

7   ordered Y.E. into her care, but Mr. Nolan explained that while the court gave Ms. Moore the

8   discretion to place Y.E. with her, Ms. Barnett had the right to object.  *Id*.

9       Prior to the August 25, 2008 hearing, Ms. Moore discussed the case with Ms. Barnett.  JSOF ¶

10  69.  Weighing all factors, Ms. Moore told Ms. Barnett that she would recommend an in-home

11  placement of Y.E. with Ms. Guzman given that she had a two month track record of consistent drug

12  testing and treatment.  *Id*.; RJN Exs. 22 & 27.  Ms. Barnett still objected to in-home placement at the

13  time.  *Id*..  According to Plaintiffs, at some point in July 2008, Ms. Moore inappropriately had

14  discussions with Y.E.'s attorney Carol Burnett.  Opp'n at 4.  Plaintiff's allege that Ms. Moore was

15  advocating for keeping Y.E from Ms. Guzman out of retaliation because Ms. Guzman spoke with Ms.

16  Moore's supervisor.  *Id*.  Defendants dispute this claim, pointing out that nothing in the record

17  supports this assertion.  Reply at 6.  Defendants also point out that the record shows that the above

18  mentioned conversation between Ms. Moore and Ms. Barnett did take place, but it was after July 28,

19  2008 and there is nothing in the record showing that this conversation was "inappropriate" or that Ms.

20  Moore advocated for Y.E.'s continued detention.  *See id*.

21      On August 25, 2008, a dispositional hearing was held, and all parties were represented.  JSOF

22  ¶ 71; RJN, Ex. 28.  In her August 25, 2008 dispositional report to the court, Ms. Moore recommended

23  that Y.E. be placed in-home with Ms. Guzman.  JSOF ¶ 70; RJN, Ex. 22.  While she felt that Ms.

24  Guzman's housing situation remained somewhat problematic, Ms. Moore felt that Ms. Guzman had

25  been drug testing consistently for two months, and had been following through with her drug

26  treatment program.  *Id*.  Ms Moore believed that Ms. Guzman's efforts to comply with the case plan

27  supported the in-home placement.  *Id*.  Ms. Barnett again objected to Ms. Moore's recommendation,

28

9

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1   and requested a contested hearing on the matter.  JSOF ¶ 73; RJN, Exs. 22 & 27.  The court set a

2   contested hearing for October 3, 2008.  JSOF ¶ 73; RJN, Ex. 27.

3       Following the August 25, 2008 hearing, Ms. Guzman spoke with Ms. Barnett by telephone.

4   JSOF ¶ 74.  Ms. Barnett told Ms. Guzman that the reason she did not agree with in-home placement

5   was because Ms. Barnett wanted to see Ms. Guzman complete another month of compliance with the

6   family maintenance plan, which included regular drug testing and counseling.  *Id.*

7       On October 3, 2008, the court held a dispositional hearing.  JSOF ¶ 75; RJN, Exs. 30 & 31.

8   Ms. Moore prepared an October 3, 2008 addendum report to the court recommending that: Y.E. be

9   placed with Ms. Guzman, Y.E. remain an dependent of the court, and the case be transferred to San

10  Francisco County where Ms. Guzman was now residing.  DSOF ¶ 75; RJN, Exs. 30 & 31.  Plaintiffs

11  dispute this contention without offering an argument or any alternative facts.  The court found that

12  Alameda County CPS complied with the case plan by making reasonable efforts to return Y.E. to Ms.

13  Guzman's custody.  JSOF ¶ 76; RJN, Exs. 31 & 32.  The court ordered that Y.E. remain a dependant

14  of the court while being placed in the custody of her parents.  *Id.*  Additionally, the county was

15  ordered to provide family maintenance services to the parents, and the parents were ordered to

16  participate in all aspects of the family maintenance plan.  *Id.*  Finally, the court ordered the matter

17  transferred to San Francisco County.  *Id.*  Y.E. was thereafter placed in the custody of Ms. Guzman,

18  and the case was transferred to San Francisco County.  JSOF ¶ 77; RJN, Ex. 31.

19      On May 25, 2010, Ms. Guzman, on behalf of herself and Y.E., filed this lawsuit against the

20  County of Alameda, Department of Children and Family Services and Ms. Moore.  Dkt. No. 1.  In

21  their Complaint, Plaintiffs allege that Defendants violated Ms. Guzman's constitutional rights to live

22  with Y.E. without government interference and assert a federal claim for violation of the 14th

23  Amendment pursuant to 42 U.S.C. § 1983, and a claim for negligence under California law.  Compl.

24  ¶¶ 8-10.[2]

25      In July 2010, Defendants moved to dismiss Plaintiffs' claims, arguing in part that they are

26  _____

27      [2]  Plaintiffs' Complaint contains two paragraphs numbered "9."  For clarity, the Court will

28  refer to the second as paragraph 10.

1  barred by absolute and qualified immunity.  Dkt. No. 3.  On September 16, 2010, the Court granted

2  Defendants' Motion as to Plaintiff's state law negligence claim, but denied it with respect to

3  Plaintiffs' § 1983 claim.  Dkt. No. 26.  The Court dismissed Plaintiffs' negligence claim, finding that

4  Defendants were entitled to absolute immunity under state law because Ms. Moore's alleged conduct

5  involved discretionary functions.  *Id*. at 10-15.

6          Defendants now move for summary judgment on Plaintiffs' remaining federal § 1983 claim.

7                              **III.   LEGAL STANDARD**

8          Pursuant to Federal Rule of Civil Procedure 56(a), the Court shall grant summary judgment as

9  to any claim or defense if the movant, by citing to particular parts of materials in the record, shows

10 that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a

11 matter of law."  Fed. R. Civ. P. 56(a), (c)[3]; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48

12 (1986).  A fact is material if, under the substantive law governing the claim or defense at issue, the

13 fact is critical and might affect the outcome of the case.  *See Anderson*, at 248.  A dispute about a

14 material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the

15 non-moving party.  *See id.* at 248-49.

16         The party moving for summary judgment has the initial burden of citing to particular parts of

17 materials in the record, including portions of the pleadings, discovery and disclosures on file, and

18 affidavits, that demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp. v.

19 Catrett*, 477 U.S. 317, 323 (1986).  When the nonmoving party has the burden of proof at trial, the

20 movant need point out only "that there is an absence of evidence to support the nonmoving party's

21 case."  *Id.* at 325.  If the movant meets this initial burden, the non-moving party must go beyond the

22 pleadings and – by its own affidavits or discovery – set forth specific facts showing a genuine issue

23 for trial.  *See Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

24 574, 586-87 (1986).  If the non-moving party does not produce evidence to show a genuine dispute as

25

26         [3]  On December 1, 2010, a revised version of Rule 56 took effect.  While portions of former
    Rule 56 have been amended, the Committee notes to the 2010 Amendments to Rule 56 indicate that
27  the standard for granting summary judgment remained unchanged and does not affect court
    decisions construing and applying the language of Rule 56.
28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1   to a material fact, the moving party is entitled to summary judgment. *See Celotex*, 477 U.S. at 323.

2   In ruling on a motion for summary judgment, inferences drawn from the underlying facts are viewed

3   in the light most favorable to the non-moving party. *See Matsushita*, 475 U.S. at 587.

## IV.   DISCUSSION

**A.     Scope of Plaintiffs' § 1983 Claim**

6          As an initial matter, the parties dispute the scope of Plaintiff's § 1983 claim for violation of

7   Ms. Guzman's 14th Amendment right "to live with daughter without government interference."

8   Compl. ¶ 8.  In her Complaint, Plaintiffs alleged that after Ms. Guzman filed a complaint against Ms.

9   Moore, "Ms. Moore then reacted with willful retaliation against Plaintiff by using her agency powers

10  to deliberately, maliciously and vindictively have Plaintiff's child removed again, even before her

11  deadline to seek a treatment program had run, and thereafter keeping the children [sic] away from

12  their [sic] mother in the foster system, without basis, for many weeks after they [sic] should have

13  been returned home.  In so doing, [Ms.] Moore deliberately inflicted cruel emotional distress on

14  Plaintiff in a blatant abuse of office and authority, (and thus under circumstances strongly suggestive

15  of inadequate administrative oversight of staff by Defendant Alameda County)."  Compl. ¶ 6.

16         Plaintiffs also allege that Y.E. was injured a second time while in foster care on July 28, 2008,

17  and that, "whether by willful or oblivious negligence, this second incident implies that inadequate

18  foster care in Alameda County is routinely permitted to go unchecked by Defendant Moore and the

19  County."  Compl. ¶ 7.

20         Defendants have moved for summary judgment on Plaintiffs' § 1983 claim for violation of the

21  14th Amendment on various grounds.  Mot. at 14-24.  In their Opposition, Plaintiffs argue that

22  Defendants have misconstrued their claim.  Opp'n at 2-3.  According to Plaintiffs, "Ms. Guzman "is

23  in fact alleging, among other things, a challenge to the initial removal of her newborn baby by

24  Alameda county social workers." *Id*. at 2.  They submit:

25         In the case at bar, defendant Alameda claims that California state law allows a county
           entity to enter a hospital room where a mother has just given birth, and, without a
26         search warrant, seize a newborn infant from a mother's control, on the basis of a
           phone call from the newborn baby's doctor that only says the newborn baby tested
27         positive for methamphetamine, without having to verify that there has been actual
           physical harm to the newborn baby.  This clearly raises the issue of whether such a

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1    law violates a person's Fourth Amendment rights under the U.S. Constitution.  It also
2    raises the issue of whether such a law/procedure violated her 14th Amendment rights,
     the right to familial association.

3    *Id*. at 1-2.

4        Plaintiffs' argument is unavailing.  As Defendants correctly note, Plaintiffs' Complaint does

5    not allege Y.E.'s initial removal as a basis for violating Ms. Guzman's Fourteenth Amendment rights.

6    As a result, Plaintiffs cannot now – after the close of discovery and in response to a motion for

7    summary judgment – recast their claim to assert this new theory.  The proper course was for Plaintiffs

8    to seek leave to file an amended complaint setting forth this claim, thereby putting Defendants on

9    notice.  Having failed to do this, Plaintiffs cannot now rely on this theory to challenge Defendants'

10   request for summary judgment.  Accordingly, the Court will limit Plaintiffs' § 1983 claim for

11   violation of the Fourteenth Amendment to that alleged in their Complaint.

12   **B.    *Rooker-Feldman***

13       In their Motion, Defendants first contend that Plaintiffs' § 1983 claim for violation of Ms.

14   Guzman's Fourteenth Amendment rights is barred by the *Rooker-Feldman* doctrine.  Mot. at 14.

15       The *Rooker-Feldman* doctrine holds that federal courts do no have subject matter jurisdiction

16   to review the judgments or final determinations of state courts, even if the state court decision might

17   involve federal constitutional issues.  *See Ignacio v. Judges of the United States Court of Appeals for*

18   *the Ninth Circuit*, 453 F.3d 1160, 1165 (9th Cir. 2006).  As the Ninth Circuit explained, the *Rooker-*

19   *Feldman* doctrine "applies only when the federal plaintiff both asserts as her injury legal error or

20   errors by the state court *and* seeks as her remedy relief from the state court judgment."  *Kougasian v.*

21   *Kougasian*, 359 F.3d 1136, 1140 (9th Cir. 2004).  Thus, "where the federal plaintiff does not

22   complain of a legal injury caused by a state court judgment, but rather of a legal injury caused by an

23   adverse party, *Rooker-Feldman* does not bar jurisdiction."  *Noel v. Hall*, 341 F.3d 1148, 1163 (9th

24   Cir. 2003).  The doctrine is therefore restricted to "cases brought by state-court losers complaining of

25   injuries caused by state-court judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S.

26   280, 284 (2005).

27       Here, Defendants argue that Plaintiffs' "claim that Y.E. was wrongfully detained in foster care

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

13

UNITED STATES DISTRICT COURT
For the Northern District of California

1 | during the dependency proceedings either seeks to overturn the orders of the juvenile court making or

2 | validating that placement, or is 'inextricably intertwined' with the juvenile court's orders and

3 | judgment in that regard." Mot. at 15. Plaintiffs, however, maintain that *Rooker-Feldman* is

4 | inapplicable because: (1) they are asserting a general constitutional challenge to Defendants' actions;

5 | and (2) the issues in this case were never actually litigated in state court. Opp'n at 1-2. Although

6 | both parties' arguments are misplaced, the Court finds that *Rooker-Feldman* does not apply in this

7 | instance. Specifically, Plaintiffs are not requesting that this Court review any judgment or

8 | determination by the juvenile court. Rather, Plaintiffs allege that Ms. Moore retaliated against Ms.

9 | Guzman by having Y.E. "removed again" and by "thereafter keeping the children away from their

10 | mother in the foster system without basis." Plaintiffs' claims also charge Alameda County with

11 | allowing inadequate foster care to go unchecked. Notably, Plaintiffs are not seeking relief from the

12 | state court determinations, but damages and prospective injunctive relief. The *Rooker-Feldman*

13 | doctrine is therefore inapplicable. Consequently, the Court denies Defendants' request to dismiss

14 | Plaintiffs' claims pursuant to *Rooker-Feldman*.[4]

15 | **C.      Issue Preclusion**

16 |          Defendants next argue that they are entitled to summary judgment because Plaintiffs are

17 | prevented from asserting their § 1983 claim under the doctrine of issue preclusion. Mot. at 15.

18 |          Issue preclusion prevents the re-litigation of issues which have already been tried or actually

19 | litigated in prior proceedings. *Teitelbaum v. Dominion Ins. Co., Ltd.*, 58 Cal. 2d 601, 604 (1962).

20 | With respect to federal civil rights claims, issue preclusion is governed by state law if a state court

21 | has rendered a previous judgment regarding the particular issue. *Ayers v. City of Richmond*, 895 F.

22 | 2d 1267, 1270 (9th Cir. 1990). Additionally, this theory may be apply to decisions made by state

23 | administrative agencies if the agency is acting in a judiciary capacity, and resolving issues of fact

24 |

25 |          [4] Defendants also argue that "Ms. Guzman, with the assistance of counsel, executed a

26 | knowing waiver of her constitutional right to contest the issue of Y.E.'s continued placement during
the jurisdictional phase of the dependency proceedings. In so doing, she waived the right to any

27 | contest or appeal of the court's order in that respect." *Id*. Defendants, however, fail to explain how
this fact fits into a *Rooker-Feldman* analysis.

28 |

where the parties have had an adequate opportunity to litigate. *People v. Garcia*, 39, Cal. 4th 1070, 1076-77 (2006) (internal citations omitted). In order for issue preclusion to apply, the following threshold requirements must be met: (1) the issue to be precluded must be identical to that decided in the former proceeding; (2) this issue must have been actually litigated in the former proceeding; (3) the issue must have been necessarily decided in the former proceeding; (4) the decision in the former proceeding must be final and on the merits; and (5) the party against whom the preclusion is sought must be the same as, or in privity with, the party to the former proceeding. *Pac. Lumber Co. v. State Water Resources Control Bd.*, 37 Cal. 4th 921, 943 (2006).

As indicated above, Plaintiffs' § 1983 claim is based on Y.E.'s continued detention during the dependency hearing and her separation from Ms. Guzman during that time. Mot. at 16. Defendants contend that the issue of detention was fully litigated and decided before the juvenile court, thus the issue of Y.E.'s detention is precluded. *Id.* at 16-17. Plaintiffs argue that they are raising constitutional issues which were not addressed by the juvenile court proceedings, and thus there is no preclusion of these issues. Opp'n at 2. While the continued detention of Y.E. was at issue in juvenile court, and is the overarching basis for Plaintiffs' claim, underlying that claim are allegations regarding Ms. Moore's actions and Alameda County's inability to provide oversight and adequate foster care. Compl. ¶¶ 6-7. The record shows that these underlying issues were not "actually litigated" in juvenile court. The Court therefore finds that the doctrine of issue preclusion does not apply to Plaintiffs' § 1983 claim.

**D.  Judicial Estoppel and Waiver**

Defendants also seek summary judgment on Plaintiffs' § 1983 claim on the ground that it is barred by principles of judicial estoppel and waiver. Mot. at 17.

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F. 3d 778, 782 (9th Cir. 2001). In determining whether judicial estoppel applies, a court may consider: (1) whether the party's later position is clearly inconsistent with its earlier position; (2) whether the party succeeded in persuading the court with its

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1  prior position; and (3) whether the party seeking to assert an inconsistent position would derive an

2  unfair advantage or impose an unfair detriment on the opposing party if not estopped.  *New*

3  *Hampshire v. Maine* , 532 U.S. 742, 750-51 (2001).

4       Defendants argue that Plaintiffs' § 1983 claim premised on Y.E.'s continued detention is

5  inconsistent with Ms. Guzman's previous position in state court because Ms. Guzman agreed to

6  Y.E.'s continued foster care during the dependency proceedings in juvenile court and waived her

7  right to contest the issue.  Mot. at 17-18.  Plaintiffs proffer two arguments in opposition.  First, they

8  argue that Ms. Guzman was under the influence of illegal drug, thus unable to "knowingly and

9  willingly" waive her rights during the state court proceeding.  Opp'n at 3.  Second, Plaintiffs argue

10 that the constitutional issues surrounding the § 1983 claim were never raised during the dependency

11 proceeding, thus Ms. Guzman never took a position as to those issues.  *Id.*  The Court agrees with

12 Plaintiffs as to their second argument.  As with the issue preclusion challenge, Plaintiffs' allegations

13 regarding Ms. Moore's actions and Alameda County's inability to provide adequate foster care were

14 not litigated during the dependency hearing.  Because these issues were never litigated, Ms. Guzman

15 could not have held a position she is now inconsistent with; thus judicial estoppel and waiver do not

16 apply.

17 **E.      Immunity**

18      Defendants next contend that they are entitled to summary judgment on Plaintiffs' § 1983

19 claim because Ms. Moore is protected from such claim by absolute or qualified immunity.  Mot. at

20 18.

21      1.      Absolute Immunity

22      Defendants argue that Plaintiffs' § 1983 claim based on violation of the Fourteenth

23 Amendment against Ms. Moore is barred by absolute immunity because it challenges her

24 prosecutorial and advocacy functions during juvenile dependency proceedings.  Mot. at 19.

25      State actors are given absolute immunity only for those functions that are critical to the

26 judicial process itself.  *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976).  At common law, judges,

27 prosecutors, trial witnesses, and jurors had absolute immunity for their critical functions within the

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1    judicial process. *Burns v. Reed*, 500 U.S. 478, 490 (1991).  The Ninth Circuit has recognized that

2    family service social workers perform some functions similar to those of prosecutors.  *Miller v.*

3    *Gammie*, 335 F. 3d 889, 896 (9th Cir. 2003).  However, because a prosecutor is only immune in

4    "initiating a prosecution and in presenting the state's case," *Imbler*, 424 U.S. at 431, a social worker's

5    activities must have this requisite connection to the judicial process in order to have absolute

6    immunity.  *Meyers v. Contra Costa County Dep't of Social Servs*, 812 F. 2d 1154, 1157-58 (9th Cir.

7    1987).  Ultimately, the Ninth Circuit has "recognized absolute immunity for social workers only for

8    the discretionary, quasi-prosecutorial decisions to institute court dependency proceedings to take

9    custody away from parents." *Miller*, 335 F. 3d at 898 (citing *Meyers*, 812 F. 2d at 1157).

10   Here, Defendants' assert that Ms. Moore's recommendations to the juvenile court are entitled

11   to absolute immunity because they are quasi-prosecutorial because her recommendations are "akin to

12   a prosecutor or advocate 'presenting the State's case' to a judge." Mot. at 20 (citing *Imbler*).  In

13   response, Plaintiffs argue that absolute immunity applies to "quasi-prosecutorial functions, but not to

14   ministerial acts of government." Opp'n at 3.  The Court is unconvinced that absolute immunity

15   applies in this instance.  Again, the Ninth Circuit has "recognized absolute immunity for social

16   workers *only* for the discretionary, quasi-prosecutorial decisions to institute court dependency

17   proceedings to take custody away from parents." *Miller*, 335 F. 3d at 898 (citing *Meyers*, 812 F. 2d

18   at 1157) (emphasis added).  Here, the dependency proceeding was initiated prior to Ms. Moore being

19   assigned to the case and Plaintiffs' claim against Ms. Moore is based on actions aside from her role in

20   the court proceeding. Dkt. No. 37-6, Ex. 4; Love Dec. ¶ 5; Moore Dec. ¶ 4).  The Court therefore

21   finds, on the facts of this case, absolute immunity does not apply.

22   2.    Qualified Immunity

23   Alternatively, Defendants contend that Ms. Moore is protected by qualified immunity.  The

24   Ninth Circuit has recognized that in circumstances where a social worker is not entitled to absolute

25   immunity for her actions, qualified immunity may apply. *Miller*, 335 F.3d at 898.  "Particularly, "to

26   the extent that social workers . . . make discretionary decisions and recommendations that are not

27   functionally similar to prosecutorial or judicial decisions," qualified immunity is available. *Id*.

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1   'Examples of such functions may include decisions and recommendations as to the particular home

2   where a child is to go or as to the particular foster parents who are to provide care." *Id.*  In

3   determining whether qualified immunity exists, courts examines whether: (1) the plaintiff has

4   established the violation of a constitutional right; and (2) the right at issue was "clearly established"

5   at the time it is alleged to have been violated whether the right was clearly established such that a

6   reasonable government official would know the conduct was unlawful.  *Saucier v. Katz*, 533 U.S.194,

7   201 (2001).  The term "clearly established" means that "[t]he contours of the right [are] sufficiently

8   clear that a reasonable official would understand that what he is doing violates that right." *Anderson*

9   *v. Creighton*, 483 U.S. 635, 639 (1987).  The key inquiry is whether the unlawfulness of the act

10  would have been apparent to a reasonable person in the light of pre-existing law at the time the act

11  was committed.  *See Hope v. Pelzer*, 536 U.S. 730, 739 (2002). "These two questions may be

12  considered in either order."  *Rosenbaum v. Washoe County*, 654 F.3d 1001, 1006 (9th Cir. 2011)

13  (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

14          Analyzing the first question, Plaintiffs allege that Ms. Moore violated Ms. Guzman's

15  Fourteenth Amendment right to live with Y.E. without government interference.  In order to establish

16  a violation of such right, Plaintiffs must prove that Ms. Moore's conduct "shocks the conscience."

17  *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008).  Toward this end, Plaintiffs contend that Ms.

18  Moore retaliated against Ms. Guzman "by using her agency powers to deliberately, maliciously, and

19  vindictively have [Y.E.] removed again, even before her deadline to seek a treatment program had

20  run, and thereafter keeping [Y.E.] away from [her] mother in the foster system, without basis, for

21  many weeks after [she] should have been returned home."  Compl. ¶ 6.  In support of these

22  allegations, Plaintiffs proffer that "Plaintiff testified in her deposition that Defendant Moore may

23  have inappropriately had discussions with the baby plaintiff's attorney, in or around July, 2008, in

24  which Moore encouraged and improperly suggested that the baby should be kept from her mother

25  longer than necessary, just out of retaliation because Guzman went to Moore's supervisor."  Opp'n at

26  4.

27          However, as Defendants point out, Plaintiffs fail to proffer any evidence of retaliation by Ms.

28

18

UNITED STATES DISTRICT COURT
For the Northern District of California

Moore. It is undisputed that Ms. Guzman made two phone calls to Ms. Moore's supervisor regarding her job performance on July 1, 2008, and July 31, 2008. During this time and thereafter, the evidence establishes that – rather than take retaliatory action against Ms. Guzman – Ms. Moore sought to reunite Y.E. with Ms. Guzman. Specifically, in her report to the juvenile court before the July 28, 2008 hearing, Ms. Moore indicated that Ms. Guzman had been drug testing regularly in San Francisco since June 6, 2008, and attending an outpatient drug placement program. RJN, Ex. 13 at 18. Ms. Moore reported that she had conducted a home visit with Ms. Guzman at her new residence in San Francisco, and although she had some concerns about the appropriateness of the residence, she stated that Ms. Guzman no longer had some of the previous signs of methamphetamine usage and that she was "impressed with [Ms. Guzman's] change at the time of time of the home visit." *Id*. Ms. Moore stated that she "would like to talk to [Ms. Guzman's] drug treatment counselor and have a Team Decision Meeting to determine possible placement of the minor back in the case of [Ms. Guzman.]" *Id*. Ms. Moore therefore indicated to the court that she "will be requesting a continuance for Disposition to assess possible in home placement of the minor." *Id*.

Thereafter, at the July 28, 2008 hearing, Y.E.'s counsel, Ms. Barnett, informed the court that she wanted to conduct her own inspection of Ms. Guzman's home and an independent investigation of how Y.E.'s May 28, 2008 head injury occurred prior to Y.E.'s release to her parents. RJN, Ex. 26. The court granted Ms. Moore discretion to release Y.E. to her parents prior to the next hearing, with notice to Y.E.'s counsel. *Id*. The court ordered a continuance for disposition until August 25, 2008. RJN, Ex. 25. In her dipositional report to the court before the August 28, 2008 hearing, Ms. Moore again recommended that Y.E. be placed in-home with Ms. Guzman. RJN, Ex. 22. However, at the August 28, 2008 hearing, Y.E.'s counsel, Ms. Barnett objected to in-home placement at that time and requested a contested hearing on it. RJN, Ex. 27 at 49-50. In light of the objection, the court did not grant Ms. Moore discretion to place Y.E. with Ms. Guzman in the interim before the contest hearing. RJN, Ex. 27 at 49-52.

Subsequently, in her report to the court before the October 3, 2008 hearing, Ms. Moore indicated that "[Ms. Guzman] has accomplished major movement toward her recovery issues. [Ms.

19

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Guzman] has impressed the undersigned with her focus and dedication regarding the process of

2    treatment.  The undersigned strongly recommends that the minor should be placed back in the care of

3    [Ms. Guzman] and that this case should be transferred to San Francisco county."  RJN, Ex. 30 at 3.

4          Citing the foregoing facts, Defendants contend that there is simply no evidence to substantiate

5    Plaintiffs' allegation of retaliatory conduct on the part of Ms. Moore, let alone any conduct sufficient

6    to "shock the conscience,"  The Court agrees with Defendants.  As detailed above, the undisputed

7    facts establish that throughout the dependency proceedings – particularly, those occurring after Ms.

8    Guzman called Ms. Moore's supervisor – Ms. Moore consistently recommended that Y.E. be placed

9    with Ms. Guzman.  The only evidence Plaintiffs have proffered is Ms. Guzman's testimony that Ms.

10   Moore "may have inappropriately had discussions" with Ms. Barnett.  This testimony amount to

11   conjecture and is insufficient to create a triable issue of fact.  The Court therefore finds that Plaintiffs

12   have failed to establish that Ms. Moore's conduct violated Ms. Guzman's rights under the Fourteenth

13   Amendment based on her recommendations to the juvenile court.

14         Plaintiffs also assert that Ms. Moore violated their Fourteenth Amendment rights by leaving

15   Y.E. unsupervised at various times of a supervised visit, and by failing to conduct criminal

16   background checks of Y.E.'s foster families.  Plaintiffs, however, fail to proffer any evidence in

17   support of these claims in their Opposition.  Rather, Plaintiffs offer nothing more than speculative

18   argument and conclusions.  They have therefore failed to establish any constitutional violation based

19   on such theories,

20         Taken together, the Court finds that Plaintiffs have failed to come forward with evidence

21   sufficient to raise a triable issue of fact that a Fourteenth Amendment violation occurred.  Having

22   failed to make this showing, the Court need not continue on to the second prong of the qualified

23   immunity analysis.  *See Saucier*, 533 U.S. at 201 ("If no constitutional right would have been violated

24   were the allegations established, there is no necessity for further inquiries concerning qualified

25   immunity."); *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998) ("[T]he better approach to

26   resolving cases in which the defense of qualified immunity is raised is to determine first whether the

27   plaintiff has alleged the deprivation of a constitutional right at all.").  The Court therefore find that

28

1   Ms. Moore is entitled to qualified immunity with respect to Plaintiffs' § 1983 claim based on

2   violation of the Fourteenth Amendment.  Accordingly, the Court **GRANTS** summary judgment in

3   favor of Ms. Moore.

4   **F.    *Monell***

5          Defendants next move for summary judgment on Plaintiffs' 1983 claim against the County.

6          A municipality or other local government may be liable under 42 U .S.C. § 1983 if the

7   governmental body itself subjects a person to a deprivation of rights or causes a person to be

8   subjected to such deprivation.  *Connick v. Thompson*, —— U.S. ——, ——, 131 S. Ct. 1350, 1359,

9   179 L. Ed.2d 417 (2011) (citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 692

10  (1978)).  However, local governments are responsible only for their own illegal acts under § 1983.

11  *Id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)).  Local governments are not

12  vicariously liable under § 1983 for actions of their employees.  *Id.*  "Plaintiffs who seek to impose

13  liability on local governments under § 1983 must prove that 'action pursuant to official municipal

14  policy' caused their injury."  *Id.*  "Official municipal policy includes the decisions of a government's

15  lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to

16  practically have the force of law."  *Id.*  To succeed on such a claim, Plaintiffs must establish: (1) that

17  they possessed a constitutional right of which they were deprived; (2) that the public entity had a

18  policy; (3) that the policy amounts to deliberate indifference to Plaintiffs' constitutional rights; and

19  (4) that the policy was the moving force behind the constitutional violation.  *Bd. of Cnty. Comm'rs v.*

20  *Brown*, 520 U.S. 397, 400 (1997).

21         In their Motion, Defendants argue that Plaintiffs' § 1983 claim against the County of Alameda

22  fails because Plaintiffs have failed to establish the existence of any unconstitutional policy, practice,

23  or custom.  Mot. at 21.  Particularly, Defendants argue that Plaintiffs' claim is premised on their

24  allegation that "inadequate foster care in Alameda County is routinely permitted to go unchecked.

25  Mot. at 22.  Defendants contend that there is no evidence to support this claim.  *Id.*  Rather,

26  Defendants assert that the undisputed evidence shows "detailed policies and procedures concerning

27  the selection, monitoring, and supervision of foster placements."  *Id.* at 23.

28

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Plaintiffs argue that they have come forward with sufficient evidence of an unconstitutional

2  policies, customs, and practices.  Opp'n at 5.  In support, Plaintiffs first argue – without citation to the

3  record – that Ms. Moore testified that she and the County had been sued within the past 10 years by a

4  family claiming that they illegally took the family's child away because the social worker suspected

5  there was sexual and emotional abuse going on by the biological parents.  Opp'n at 5.  Plaintiffs next

6  contend that the fact Y.E. suffered two injuries is sufficient to show that an unconstitutional policy or

7  practice existed.  *Id*.  Third, Plaintiffs proffer – again without citation to the record – that, "[Ms.]

8  Moore testified in an evasive manner in her deposition about such practices."  Fourth, Plaintiffs assert

9  that, there is no evidence that the County performed appropriate background checks before placing

10  Y.E. with the two foster care families.  *Id*. at 5-6.  Based on these assertions, Plaintiffs contend that

11  "[i]f the [C]ounty had such detailed procedures and does appropriate background checks, how is it

12  that such injuries could have occurred?"  Opp'n at 6.

13    The Court, however, agrees with Defendants that none of Plaintiffs' arguments are sufficient

14  to meet their burden of identifying an unconstitutional policy, practice, or customer exists.  At most,

15  Plaintiffs have come forward with arguments and theories, but fail to cite to any evidence

16  demonstrating that the County had a policy, practice, or custom of allowing inadequate foster care to

17  go unchecked or that Ms. Moore was acting pursuant to that policy.  Moreover, Plaintiffs have failed

18  to point to any facts showing that if such a policy existed, it was the moving force behind the

19  constitutional violation.  The Court therefore finds that the County is entitled to summary judgment

20  on Plaintiff's § 1983 claim.

21                              **V.   CONCLUSION**

22    For the reasons set forth above, the Court **GRANTS** Defendants' Motion for Summary

23  Judgment (Dkt. No. 37).

24    **IT IS SO ORDERED.**

25  Dated: March 31, 2012

26  _____

27  Maria-Elena James
    Chief United States Magistrate Judge

28

22